Mary Jane SEARCY, Petitioner,

v.

CHEROKEE MOTEL et al., and State Industrial Court, Respondents, U. S. F. & G., Insurance Carrier.

No. 39524.

Supreme Court of Oklahoma.

July 25, 1961.

H. G. E. Beauchamp, Miami, for Petitioner.

Sanders & McElroy and Dale F. Whitten, Tulsa, and Mac Q. Williamson, Atty. Gen., for respondents.

Don D. Dees, Tulsa, for insurance carrier.

JACKSON, Justice.

Under review in the present proceeding is the order of the State Industrial Court terminating claimant's compensation for temporary total disability and relieving the employer of the duty to provide further medical and surgical treatment. The order, as made, is challenged by claimant as unsupported by competent evidence.

Claimant admittedly sustained on July 14, 1959, a compensable injury to her neck and back. At the instance of the insurance carrier she was furnished medical attendance by Dr. G., under whose out-patient care she remained until October 6, 1959, when she procured the services of Dr. H. The latter physician saw her on October 15, and hospitalized her for approximately nine days, during which time she was treated with halter traction and novocaine injections both in the occipital and lumbosacral area. Upon her release from the hospital, Dr. H. saw her again on November 6, and November 14; on both occasions she continued to complain of pain. On December 1, claimant returned to Dr. G. at the direction of the insurance carrier and was treated by him until he released her on January 16, 1960. Following her dismissal by Dr. G., claimant was again seen by Dr. H. in February and March of 1960. At the latter's request Dr. M. performed a myelogram test which revealed the presence of "an extradural extrinsic defect between lumbar 3 and 4". Upon obtaining the result of the myelogram test Dr. H. recommended corrective surgery. Claimant agreed to undergo the operation.

The principal issue formed before the trial tribunal was whether or not surgery was reasonably necessary to definitely determine and correct the suspected disc pathology.

Dr. S., a neurologist who examined claimant for the employer on three different occasions, indicated that on the basis of his own tests and observations, no immediate surgery was needed. He testified as follows:

"* * * In other words, neurologically or clinically, by examination, I don't find any evidences of intervertebral disc.

"Q. Is a positive myelogram alone sufficient to diagnose difficulty of this kind?

"A. I don't think that the defect that was seen, although it is definite, was sufficient to—without clinical picture more strongly suggesting disc, was sufficient to state that this patient needed surgery immediately or anything of that type."

He pointed out that myelogram tests of the lower lumbar region yield false positive results in thirty percent of the cases. Dr. S. explained that the symptomatology of a disc involvement was rather inconclusive and "if by chance she was operated on and no pathology was found whatever of a traumatic nature", the patient would still have some five to eight percent permanent disability due to the exploratory surgery alone. This, he explained, was because there always develops some residual "muscle tightness" following such surgery. Although Dr. S. would not "criticize" the opposite view of Dr. H., he nonetheless had "some reservations as to the complete legitimacy of going ahead on a laminectomy at this state in the case".

▮ Whether exploratory surgery should be directed as necessary to definitely determine the existence of a disc pathology thought to arise from an accidental injury, presents a question of fact to be determined by the State Industrial Court, whose finding made on such issue from conflicting medical testimony will not be disturbed by this court, when based on competent evidence reasonably tending to support it. See Douglas Aircraft Company v. Titsworth, Okl., 356 P.2d 365, 368 and the cases cited therein. Both Dr. S. and Dr. H. gave competent expert evidence expressing divergent opinions as to the advisability of an exploratory disc surgery. The trial tribunal resolved the disputed issue of fact adversely to the claimant. In such cases it is neither the duty nor the province of this court to interfere on review with the finding so made. 85 O.S.1951 § 26; Greer v. Sinclair Pipe Line Co. et al., Okl., 356 P.2d 356.

▮ Neither can this court disturb the trial tribunal's order terminating temporary total disability payments as of January 16, 1960. There is competent evidence by Dr. G. and Dr. S. that after January 16, 1960, claimant's condition had reached the end of the healing period and was capable of evaluation in terms of its permanency. See Dooley v. Broce Construction Company, Okl., 358 P.2d 815.

▮ Claimant urges error in the trial tribunal's failure to allow medical and hospital expenses incident to the attendance rendered by Drs. H. and M. The complaint so made is premature. The order merely recites that claimant "was furnished treatment by doctors of her own choice without (prior) authorization of the employer". No itemized charges or claims were submitted and there was nothing before the trial tribunal upon which it could adjudicate claimant's rights to any medical expenses so incurred. The quoted statement in the order does not operate as an adjudication disallowing any expenses incurred, as there was no finding that either the hospital services or those of Drs. H. and M. were unnecessary or were procured while employer was tendering adequate and satisfactory medical care. See Featherstone Cabinet Shop v. Lebovitz, Okl., 270 P.2d 653. The order as made does not operate to bar claimant or her attending physicians from presenting any claim for approval of specific medical services rendered. We deem it therefore unnecessary to determine this question until some definite claim has been presented in an authorized proceeding. See Skelly Oil Co. v. Standley, 148 Okl. 77, 297 P. 235; Van Ness Const. Co. et al. v. Waltcher et al., 185 Okl. 657, 95 P.2d 858; Galey & Malloy v. Belt, 187 Okl. 318, 102 P.2d 868; Patterson Steel Company v. Smith, Okl., 353 P.2d 126; see also Foster Wheeler Corporation v. Bennett, Okl., 354 P.2d 764.

▮ Lastly, claimant contends that the trial tribunal erred in reserving the question of permanent disability for future disposition. While employer's testimony estimated claimant's condition at 5 per centum permanent partial disability, claimant's medical evidence evaluated her impairments solely in terms of temporary incapacity. The ruling in this respect inured to claimant's benefit. It affords her a fair opportunity to introduce competent expert evidence as to the nature and extent of her permanent disability. We note, however, that the order recites: "that the extent of claimant's permanent *partial* disability is

held in abeyance for further hearing." Since the matter of permanent disability was reserved in its entirety for a future determination, the quoted part of the order was improper as prejudging the issue. It should be modified to read as follows: "that claimant's rights to an award for permanent disability are reserved for further hearing". See Dooley v. Broce Construction Company, supra.

As no authorities were presented in support of claimant's request for assessment of costs against the employer, we give no consideration to the matter so raised. Bowling v. Blackwell Zinc Company, Okl., 357 P.2d 1009.

The Order as modified is sustained.

WILLIAMS, C. J., and WELCH, DAVISON, HALLEY, JOHNSON and IRWIN, JJ., concur.