Bernard A. LYNN, Respondent,

v.

Charles Dean SHAW, Petitioner.

No. 55402.

Supreme Court of Oklahoma.

Nov. 25, 1980.

Selby, Connor & Coyle by James W. Connor, Bartlesville, for respondent.

Sam P. Daniel, Jr., and Cynthia S. Grosse, Tulsa, for petitioner.

1. It is provided by 76 O.S.Supp.1976 § 8.1:
   "From and after the effective date of this act, the alienation of the affections of a spouse of sound mind and legal age or seduction of any person of sound mind and legal age is hereby abolished as a civil cause of action in this state."

2. *French v. Deane, 19 Colo. 504, 36 P. 609, 610 (1894).*
   II Cooley: Adaptation of Blackstone's Commentaries On The Laws Of England, Book III, Chap. 8, p. 139 Chicago Callaghan & Co. (1884) states:
   "Injuries that may be offered to a person, considered as a *husband*, are principally three: *abduction*, or taking away a man's wife; *adultery*, or criminal conversation with her; and *beating* or otherwise abusing her. 1. As to the first sort, *abduction*, or taking her away, this may either be by fraud or persuasion, or open violence: though the law in both cases supposes force and constraint, the wife having no power to consent; * and therefore gives a remedy by writ of *ravishment*, or action of *trespass vi et armis, de uxore rapta et abducta.* This

HODGES, Justice.

The certified order which affects a substantial part of the merits of this controversy is the holding of the district court, as a matter of law, that the Legislature did not abolish the tort of criminal conversation when it abrogated the causes of action for alienation of affections and seduction. The question presented is whether 76 O.S.Supp. 1976 § 8.1 [1] abolished by implication the tort of criminal conversation when it explicitly abrogated the causes of action for alienation of affections and seduction. Because the question posed is a case of first impression, and interlocutory appeal will materially advance or dispose of this action, we grant certiorari.

It is unquestioned by the litigants that the tort of alienation of affection has been abolished in Oklahoma. Nevertheless, because alienation of affection is a different tort from that of criminal conversation, it is asserted that the statute which abolished the torts of alienation of affection and seduction did not operate to abrogate the tort of criminal conversation.

I

There are two forms of action for the husband at common law for offenses against the marital relationship: [2] 1) the action lay at the common law; and thereby the husband shall recover, not the possession of his wife, but damages for taking her away: and by statute Westm. 1, 3 Edw. I, c. 13, the offender shall also be imprisoned two years, and be fined at the pleasure of the king. Both the king and the husband may therefore have this action; and the husband is also entitled to recover damages in an action on the case against such as persuade and entice the wife to live separate from him without a sufficient cause. The old law was so strict in this point, that if one's wife missed her way upon the road, it was not lawful for another man to take her into his house unless she was benighted and in danger of being lost or drowned; but a stranger might carry her behind him on horseback to market to a justice of the peace for a warrant against her husband, or to the spiritual court to sue for a divorce. 2. *Adultery,* or criminal conversation with a man's wife, though it is, as a public crime, left by our laws to the coercion of the spiritual courts; yet, considered as a civil injury (and surely there can be no greater), the law gives a satisfaction to the husband for

enticement of the wife away from the husband, which evolved into an action for alienation of affections, and 2) for seduction, which evolved into an action for criminal conversation. The right of the husband to maintain an action against a third party for either criminal conversation or adultery is founded on the common law conception of the husband's property right in his wife.[3] The basis for the husband's right of action for loss of consortium is premised on the idea that the wife was her husband's servant because an interference with the service of a servant is an actionable trespass. The wife and servant were considered to be chattels, and, therefore, the husband was deemed to be entitled to a proprietary action for the loss of her services. The two causes of action belong to the same genus because each: partakes of the nature of trespass on the case, sound in tort; and affects all parties to the action.

■ Prosser[4] delineates three types of actions involving interference with the husband's interests: enticement, criminal conversation, and alienation of affections. He notes that, although they often are treated as separate torts, there is no good reason for distinguishing them. Prosser states: "There is a decided tendency to confuse the

three or to lump them together under the general name of 'alienation of affections' without any attempt to distinguish the possible elements of the tort." [His rationale apparently is that they represent three forms of interference with the same marital interest and, although they need not be, all three may be present in the same case]. Except where the actions have been abolished by statute, they still exist, and generally lie in favor of a wife as well as a husband under the Married Women's Act.[5]

■ In the absence of statutes abrogating the action, a spouse may sue for the common law tort of criminal conversation. Although adultery is the *sine qua non* for criminal conversation, it may be defined more precisely as adultery in the aspect of a tort. An action for criminal conversation is for violation of a private wrong, while an action for adultery is recompense for the public wrong. The fundamental right violated by criminal conversation is the right of exclusive sexual intercourse which the law grants as a necessary consequence of the relationship. The foundation of the action is tortious injury to marital rights by invasion of the conjugal relationship. Recovery is granted on the basis of loss of consortium and services, injury to social

it by action of *trespass vi et armis* against the adulterer, wherein the damages recovered are usually very large and exemplary. But these are properly increased and diminished by circumstances; as the rank and fortune of the plaintiff and defendant; the relation or connexion between them; the seduction or otherwise of the wife, founded on her previous behaviour and character, and the husband's obligation by settlement or otherwise to provide for those children, which he cannot but suspect to be spurious. In this case, and upon indictments for polygamy, a marriage *in fact* must be proved; though generally, in other cases, reputation and cohabitation are sufficient evidence of marriage..."
\* W. Prosser, *Handbook, The Law Of Torts* § 124, 875 (4th Ed. 1971) cites Holdsworth, *History Of English Law*, 430 (2d Ed. 1937) which states:
"... it was considered that she was no more capable of giving a consent which would prejudice the husband's interest than was his horse."

3. *Henson v. Thomas, 231 N.C. 173, 56 S.E.2d 432 (1949), 12 A.L.R.2d 1171, 1173 (1950).* See also, J. Lippman, "The Breakdown of Consortium," 30 Cal.L.Rev. 651, 653 (1930).

4. W. Prosser, *Handbook, The Law Of Torts*, § 124, 876–77, 4th Ed. (1971).

5. See 32 O.S. 1971 § 15 which provides:
   "Women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone: Provided, that this Chapter, shall not confer upon the wife a right to vote or hold office, except as is otherwise provided by law."

position, impairment of family honor and mental suffering.[6]

In a suit to recover for alienation of affection, it is essential for the plaintiff to show that the defendant produced and brought about the alienation of the affections of the spouse. Sexual misconduct is not an essential ingredient to recovery, but a consideration in aggravation of damages. However, suit for criminal conversation in an action will fall without the proof of *seduction*, although it is not necessary to maintain the action that there be any proof of alienation of affections.[7] Either cause of action may exist without the other.[8] The right protected in an action for alienation of affections is freedom from wrongful interference by a third party causing loss of love, companionship, and affection of spouse. It does not necessarily involve loss of affection through adulterous relations.[9]

Authorities are cited by the respondent from several jurisdictions which allow actions for criminal conversation to be brought after actions for alienation of affection have been obliterated.[10] However, in each instance the statute relied upon by respondents in the cases cited involved only the abolishment of the tort of alienation of affections and did not include seduction. They are, therefore, inapplicable.

Numerous authorities favor the abolishment of the action for criminal conversation because it diminishes human dignity and inflicts pain and humiliation upon the innocent. Even the successful plaintiff succeeds in the dubious victory of compelling a forced sale of the spouse's affection and then monetary damages are either inadequate or punitive. The action does not prevent human misconduct and the interests which the action seeks to protect are not protected by its existence. Viable contented marriages are not broken up by an outsider, and the harm engendered through the opportunity for blackmail and the ruination of defendant's reputation by the mere hinging of the action far outweighs any reason for its continuance.[11]

Statutes in derogation of the common law are required by 12 O.S. 1971 § 2 [12] to be liberally construed. We do not condone sexual promiscuity and continue to hold the institution of marriage in the highest esteem. However, based on a thorough tracing of the evolution of the common law action of seduction as a *trespass vi et armis* into the tort of criminal conversation, we find they are intertwined so completely as to encompass one another. The Legislature fully intended to abolish the civil actions of alienation of affection and criminal conver-

**6.** *Fennell v. Littlejohn, 240 S.C. 189, 125 S.E.2d 408, 412 (1962). Matusak v. Kulczewski, 295 Pa. 208, 145 A. 94 (1928), 68 A.L.R. 557 (1930).*

**7.** *Merrit v. Cravens, 168 Ky. 155, 181 S.W. 970, 974 (1916).*
A generally accepted definition of Seduction is the act of a man in enticing a woman to have unlawful intercourse with him by means of persuasion, solicitation, promises, bribes, or other means without the employment of force. *Van de Velde v. Colle, 8 N.J.Misc. 182, 152 A. 645, 646 (N.J.Cir.Ct.1930).*

**8.** See note 2, supra.

**9.** *Giltner v. Stark, 219 N.W.2d 700, 704 (1974).*

**10.** *Antonelli v. Xenakis, 363 Pa. 375, 69 A.2d 102 (1949)* citing 48 P.S. § 170. Abolishment of actions for alienation of affections does not abolish action for criminal conversation. *Di Blasio v. Kolldner, 233 Md. 512, 197 A.2d 245 (1964).* Statute abolishing remedies for breach of promise to marry and for alienation of affections does not abolish actions for criminal con-

versation. Code 1957, Art. 75 C § 2. *Tarquino v. Pelletier, 28 Conn.Sup. 487, 266 A.2d 410 (1970).* General Statutes § 52 572b abolished actions for alienation of affections and breach of promise to marry.

**11.** *See Fadgen v. Lenkner, 469 Pa. 272, 365 A.2d 147, 151 (1976);* Greer, "Criminal Conversation: Civil Action For Adultery," 25 Baylor L.Rev. 495, 499 (1973); and Prosser, note 4, supra.

**12.** It is provided by 12 O.S. 1971 § 2:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

sation, because the statute abolishing seduction includes the evolved tort, criminal conversation.[13]   Although perhaps it would have been clearer to list criminal conversation as abolished in 76 O.S.Supp. 1976 § 8.1, it also would be surplusage.[14]

REVERSED.

IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and OPALA, JJ., concurring.

LAVENDER, C. J., and HARGRAVE, J., dissenting.

---

**13.** The criminal sanctions for adultery and seduction under promise of marriage have not been abolished.  See 21 O.S. 1971 §§ 871, 872 and 21 O.S. 1971 § 1120.

**14.** Other jurisdictions have disposed of this question in different ways in the absence of a statute abolishing "heart balm" causes of actions.  Two of these cases, *Lundberg v. Allen, 176 N.W.2d 775 (Iowa 1970)* and *Bearbower v. Merry, 266 N.W.2d 128 (Iowa 1978)*, found the cause of action for criminal conversation to be contingent on the existence of a viable marriage.  The court reasoned that because the tort is based on a marital right, the cause of action ceases to exist upon divorce unless it is preserved in the decree.  In *Fadgen v. Lenkner,* *365 A.2d 147, 153 (Pa.1976)* the tort of criminal conversation was abolished by judicial fiat as an anachronism not in accord with modern realities and societal change.  The court cited *Jackman v. Rosenbaum Co., 263 Pa. 158, 175, 106 A. 238, 244 (1919)* aff'd. *260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922)*:

"The fundamental principles of the common law, while liable to expansion, are in essence unchangeable, but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment; and, pursuing this thought, *what today is a trespass, may, by development of law, not be so tomorrow.*"